# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | | |
|---|---|---|
| Timothy McNeal, # 95525-020, | ) | Case No. 2:21-cv-03431-JFA-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Ms. J. Hutchinson; Mr. C. Nevils; | ) | |
| Mr. Glenn; Ms. Lanham; Ms. Necomb; | ) | |
| Ms. V. Martin; Mr. Taylor; and | ) | |
| Ms. Johnson, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff, proceeding *pro se* and *in forma pauperis*, brings this civil action alleging violations of his Eighth Amendment rights pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1] This matter is before the Court upon a Motion to Dismiss, or in the alternative, Motion for Summary Judgment (Dkt. No. 33) filed by Defendants Ms. J. Hutchinson, Mr. C. Nevils, Mr. Glenn, Ms. Lanham, Ms. Necomb, Mr. Taylor, Ms. Johnson, and Ms. V. Martin, and Plaintiff's cross Motion for Summary Judgment (Dkt. No. 40). For the reasons set forth herein, the undersigned recommends granting Defendant's motion and denying Plaintiff's motion.

## BACKGROUND

In the instant action, Plaintiff complains about events that occurred while he was in federal custody at Federal Correctional Institution-Edgefield ("FCI") from February of 2019 through the present time. (Dkt. No. 1.) Specifically, the Complaint alleges that Plaintiff was issued medical shoes on February 14, 2019, and that these shoes were improperly confiscated during an

---

[1] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

institutional lockdown on August 7, 2019. (Dkt. No. 1-1 at 12.) Plaintiff alleges that "during the time of this lengthy lockdown, [he] also suffered excruciating pain in his stomach." (*Id*. at 16.) According to Plaintiff, Defendant Acting Warden J. Hutchinson authorized the lockdown and the inmates were not provided with proper nutrients or clean drinking water. Plaintiff alleges that he became "sick in his abdomen" as a result and was diagnosed with Helicobacter Pylori. (*Id*.) Plaintiff alleges that his medical issues concerning his "foot, leg, and stomach" persist and that "medical personnel still refuse to properly attend to [his] current, ongoing, medical issues." (*Id*. at 17.)

According to Plaintiff, the defendants have "all failed to act promptly on Plaintiff's complaint to ensure" Plaintiff has been receiving proper medical treatment. (*Id*. at 20.) Plaintiff alleges that during the events alleged in the Complaint, Defendant J. Hutchinson was the Acting Warden at FCI-Edgefield, Defendant C. Nevils was a Captain, Defendant Glenn was a "part of the Education Department," Defendant Lanham was the Health Service Administrator, Defendant Necomb was the Assistant Health Service Administrator, Defendant Taylor was a Unit Manager, Defendant Johnson was a psychologist, and Defendant V. Martin was a Case Manager. (Dkt. Nos. 1-1 at 6–8; 15.)

The Complaint alleges that Plaintiff is "pursuing his claims under *Bivens* against individual federal employees," and that Defendants' conduct violated his constitutional rights under the Fourth, Fifth, and Eighth Amendments. (Dkt. No. 1-1 at 4.) He seeks compensatory, nominal, and punitive damages. (*Id*. at 23.)

Plaintiff and Defendants attach Plaintiff's medical records to their briefings. These records document the following. On June 23, 2017, Plaintiff was issued medical shoes: "one pair of tennis shoes with custom inserts," with a "stop date" of June 23, 2018. (Dkt. No. 33-2 at 353.) A

consultation request for prosthetics/orthotics dated February 12, 2018, states "needs soft shoe to accommodate bunions." (*Id*. at 393.) On February 14, 2019, Plaintiff was again issued medical shoes with a stop date of February 14, 2020. The comments section states "Pes Planus and Bunions>22deg. bilateral. Size 9 XW." (*Id*.)

On June 19, 2019, Plaintiff complained of stomach pain, and Health Services staff ordered chest and abdominal X-rays to determine the cause of the pain. (*Id*. at 340.) The X-rays were taken June 26, 2019, and the results were unremarkable. (*Id*. at 383.) On August 21, 2019, Health Services staff reviewed Plaintiff's medical chart and decided he needed Heliobacter Pylori ("H. Pylori") testing. (*Id*. at 336.) Plaintiff tested positive for H. Pylori. (Id. at 332.) Plaintiff was prescribed new medication—Amoxicillin, Clarithromycin, and Omeprazole—to treat the H. Pylori. (*Id*. at 330–33.) A Health Services note entered September 18, 2019, states that Plaintiff "missed first 2 days of treatment," and ordered "7 more days of therapy." (*Id.* at 330.) A Health Services note entered October 1, 2019 states

> On September 9, 2019, this inmate's results returned, he was called down to medical and told he was placed on Amoxicillin, Clarithromycin and Omeprazole for fourteen days on pill line to treat Helicobacter pylori. He was explained to what Helicobacter pylori was, reviewed signs and symptoms and he was told to stop taking Ibuprofen and Naproxen, change out toothbrush, cup and utensils. He was advised to return to sick call if symptoms continue. There is no documentation of him showing up for sick call visit after being treated for Helicobacter pylori. In order for his condition to be re-evaluated, patient needs to report to sick call.

(*Id.* at 329 (verbatim).)

On October 8, 2019, Plaintiff was seen for follow-up at Health Services. Notes from this visit state

> Inmate was told again that he was diagnosed with Helicobacter Pylori. You have been treated twice for your continued symptoms. A plan of care was discussed with you to make recommendations to have you further evaluated by a general surgeon or gastroenterologist due to your continued abdominal issues. The process of

> approval of a consultation was discussed with you and you were advised to return
> to sick call if your symptoms worsen.

(*Id*. at 322 (verbatim).) Under "Pain Assessment," the note documents that Plaintiff was in a motor

vehicle accident 15 years earlier and "reports having pain ever since." (*Id*.)

On November 21, 2019, Plaintiff reported to Health Services complaining of pain and

swelling in his feet. (*Id*. at 315.) Plaintiff claimed that his medical shoes were confiscated during

lockdown and he was referred to custody staff to follow up on this issue. (*Id*.) A Health Services

note dated December 9, 2019 states

> Inmate has been deferred to custody in regards to medical shoes. Inmate was
> provided the proper documentation when shoes were issued and no one verified
> with Health Services from custody, if shoes were authorized or not. Also there is
> no way for medical to verify what happen to medical shoes when they should of
> been on inmate's feet This is not a medical issue, this is a custody issue. Inmate has
> already been told to report his issue to the custody chain of command. Inmate
> continues too come to all other people circumventing the staff.

(*Id*. at 314.) A Health Services note dated January 24, 2020 states

> Pt presents to s/c with c/o continued swelling/discomfort to bilateral feet. Edema
> noted to bilateral tops of feet. Prominent hallux vagus noted that causes discomfort
> with current shoes. He states medical shoes were confiscated during shakedown in
> September and is in process of receiving those back. Pt states that he refused the
> last x-ray that would submitted for feet but is requesting a second opportunity, will
> submit a second time. Vitals obtained during this encounter. He ambulates with
> favoring gait but does not appear in any acute distress at this time.

(*Id*. at 212.) X-rays were taken of Plaintiff's feet on January 28, 2020. (Id. at 210.) The x-rays

revealed, *inter alia*, no fracture or malalignment in his feet. (*Id*.) A Health Services note dated

March 13, 2020 states that Plaintiff is to be issued medical shoes, but "no current stock is

available." The shoes "will be placed on order and issued to inmate upon arrival." (*Id*. at 208.)

Plaintiff received "alternative institutional shoes" on April 28, 2020; specifically, "right shoe 9.5

XXW." (*Id*. at 232.)

On June 24, 2020, a Medication Reconciliation encounter was performed at Health Services following the completion of a gastroenterology consult the previous day. (*Id*. at 199.) Another gastroenterology consult was submitted for "EDG/colonoscopy." (*Id*.) Plaintiff underwent a colonoscopy on October 28, 2020, during which "a few small-mouthed diverticula in sigmoid colon" were found. (*Id*. at 183.) On November 10, 2020, Plaintiff was evaluated by a "Mid Level Provider." (*Id*. at 174.) During this encounter, Plaintiff complained of stomach pain and foot pain, and a consultation request was entered for prosthetics/orthotics, with a target date of January 13, 2021. (*Id*. at 174–77.) On November 13, 2020, an Administrative Note was entered regarding the results of Plaintiff's stomach biopsy collected October 28, 2020. The biopsy showed that Plaintiff was negative for H. Pylori and had mild chronic gastritis with focal intestinal metaplasia. (*Id*. at 173.) On December 3, 2020, Plaintiff had lab work drawn. *(Id.* at 171.) On December 9, 2020, a Nurse Practitioner resubmitted the consult for prosthetics/orthotics, noting the institution was unable to provide regular shoes wide enough for Plaintiff's feet. (*Id*. at 168.) Plaintiff had tried the widest shoe available, but it would not accommodate his bunion. (*Id*.)

On February 26, 2021, Plaintiff had a follow-up appointment with a Mid Level Provider, wherein Plaintiff complained of continued abdominal pain and chronic foot pain. Plaintiff was advised to follow up at Sick Call as needed, and was advised that he was pending a follow-up with general surgery for consultation on his chronic abdominal pain and a consultation with prosthetic/orthotics. (*Id*. at 98.) On May 25, 2021, Plaintiff had a gastroenterology consultation. (*Id*. at 165–67.) On May 26, 2021, upon review of the final report from the gastroenterology consult, Plaintiff was prescribed 40 mg of Omeprazole, a request for a CT scan of the abdomen and pelvis was entered, and a general surgery consult was requested. (*Id*. at 86–87.)

On June 2, 2021, various labs were drawn including CMP, Lipid Panel, CBC, and HGBAIC. (*Id.* at 84.) On June 25, 2021, Plaintiff was evaluated by a Mid Level Provider. (*Id.* at 77.) Plaintiff was informed of the results of his colonoscopy report and advised on diet management and the continued use of Tylenol. (*Id.*)

On July 26, 2021, Plaintiff went on a medical trip for a prosthetics and orthotics consultation. He was measured for one pair of shoes with Velcro inserts and one pair of custom cork inserts that would be shipped to Plaintiff. (*Id.* at 68; 72.) Plaintiff ordered a custom shoe on back order and decided to wait for it to become available, rather than pick a readily available style. (*Id.* at 68.) On September 23, 2021, an Administrative Note was entered regarding Plaintiff's submission of a Sick Call request complaining of stomach, leg, and feet pain. (*Id.* at 51.) The note indicates that Health Services staff have completed a full work up and everything has been ruled out. The note states that "at this point there is no further care or work up warranted." (*Id.*) An Administrative Note entered later that same day states, "IM has been seen on numerous occasions by multiple providers and his work up for abdominal pain is negative." (*Id.* at 50.)

On November 24, 2021, Plaintiff reported to Sick Call complaining of stomach pain. (*Id.* at 31.) Plaintiff claimed he needed an MRI and a special meal plan. (*Id.*) Plaintiff was advised to purchase heartburn and pain-relieving medication and to avoid hot/spicy foods, drink plenty of water, get regular exercise, and not eat late at night before bedtime. Plaintiff was also advised that his provider follow up was still pending. (*Id.*) On February 25, 2022, Plaintiff reported to Sick Call with complaints of stomach pain and requested cotton inserts for his shoes. He asked to be placed on a different colored sucralfate pill. Plaintiff was advised that his medication is the same no matter the color and that Health Services could order shoe inserts, but the were not made of cotton. (*Id.* at 6–7.)

6

Plaintiff filed this action on October 25, 2021. (Dkt. No. 1.) On April 11, 2022, Defendants filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. (Dkt. No. 33.) By Order filed April 12, 2022, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 34.) Plaintiff filed a Response in Opposition to Defendants' motion and a cross Motion for Summary Judgment on June 13, 2022. (Dkt. No. 40.) Defendants filed a reply brief on June 27, 2022 and a supplement to their brief on September 1, 2022. (Dkt. Nos. 42; 43; 45.) Plaintiff filed a reply brief on July 11, 2022. (Dkt. No. 44.) The motions have been fully briefed and are ripe for review.

## **STANDARDS**

### A.     **Liberal Construction of Pro Se Complaint**

Plaintiff brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### B.     Rule 12(b)(6) Dismissal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

### C.     Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn

in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

In their Motion to Dismiss, or in the alternative, Motion for Summary Judgment, Defendants contend that Plaintiff failed to exhaust his administrative remedies with respect to his allegations regarding the confiscation of his shoes and deficient nutrition/water quality. (Dkt. No. 33 at 17.) Defendants further argue that Plaintiff's allegations do not give rise to an actionable claim under *Bivens*. (*Id*. at 30–38.) Defendants also assert that Plaintiff has failed to present sufficient evidence to support any Eighth Amendment deliberate indifference claims. (*Id*. at 23–30.)

### A.    Exhaustion

The Complaint asserts constitutional violations under the Eighth, Fourth, and Fifth Amendments. (Dkt. No. 1 at 4.) The Complaint specifically alleges a claim for deliberate indifference to Plaintiff's "chronic medical condition" under the Eighth Amendment. (Dkt. No. 1-1 at 3, 18–19.) The Complaint does not specify how Plaintiff's constitutional rights were otherwise violated, although it mentions "hazardous conditions" and "cruel and unusual punishment." (*Id.* at 19–22.) In his "Statement of Claim," Plaintiff alleges his medical shoes were confiscated during a lockdown and that he was not provided "proper nutrients" or "clean water" during the lockdown. (*Id*. at 15–16.)

In their Motion, Defendants argue that while "Plaintiff has exhausted administrative remedies regarding medical treatment," any claims concerning the alleged confiscation of Plaintiff's shoes and deficient nutrition/water quality should be dismissed because Plaintiff has not exhausted his administrative remedies as to these claims. (Dkt. No. 33 at 21–23.) Plaintiff responds

that "the confiscation of his medical shoes is a medical treatment issue" and this issue was "automatically merged into the exhausted claim that medical treatment was delayed." (Dkt. No. 40 at 10; 44 at 1.)

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. *Booth v. Churner*, 532 U.S. 731, 741 (2001). A *Bivens* action, like an action under § 1983, is subject to the exhaustion of administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," and is required even when the relief sought is not available. *Booth*, 532 U.S. at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court. *Porter*, 534 U.S. at 524 (citing *Booth*, 532 U.S. at 741).

To fully exhaust a *Bivens* claim, a federal prisoner first must properly raise his grievance through all levels of the BOP's Administrative Remedy Program. 28 C.F.R. §§ 542.10, et seq. The grievance procedure is a multi-step process. The first step requires the inmate to file a formal written complaint with the Warden of the prison on a Form BP–9. The inmate's complaint must be filed with the Warden within twenty calendar days from the date of the offending event. 28 C.F.R. § 542.14(a) (emphasis added). If the inmate is not satisfied with the Warden's response, at step two, the inmate may appeal (using a Form BP–10) to the Regional Director of the BOP within twenty (20) calendar days of the date the Warden signed the response. If the inmate remains dissatisfied with the response, thereafter, an inmate may appeal the Regional Office's response to the General Counsel of the Bureau by completing a Form BP–11 within thirty (30) calendar days

of the date the Regional Director signed the response. 28 C.F.R. §§ 542.14 and 542.15. Appeal to

the General Counsel is the final level of agency review. 28 C.F.R. § 542.15(a). Thus, a claim has

not been administratively exhausted until it has been filed with the General Counsel.

Here, Defendants have submitted the affidavit of J. Carter, the Legal Assistant for the South

Carolina Consolidated Legal Center located at FCI. Defendants have also provided Plaintiff's

submitted administrative remedy requests (Dkt. No. 33-1 at 5–32.) Cater avers that Plaintiff has

exhausted his administrative remedies concerning medical treatment, but not with respect to the

alleged confiscation of his medical shoes and the allegations concerning nutrition and clean water.

(Dkt. No. 33-1 at 2.) With respect to the confiscation of Plaintiff's medical shoes, Carter avers that

Plaintiff's initial Administrative Remedy filing on this issue was closed "with the explanation that

Plaintiff's Alternative Institutional Shoes had expired at the point Plaintiff alleges they were

confiscated." (*Id.* at 3.) According to Carter, while Plaintiff appealed "the institution level

response," his appeals were "rejected as Plaintiff did not include his signature, and . . . because

Plaintiff exceeded the page limit. Plaintiff did not appeal these rejections or file remedies to the

central office concerning these rejections." (*Id.*) Carter further avers that "Plaintiff has never filed

any administrative remedies concerning nutrition or water quality." (*Id.*)

Upon review, the record shows that Plaintiff submitted administrative remedy requests

concerning "property returned during mass shakedown," and "complaint on confiscated property"

and that the responses to these requests were not appealed at the national level. (Dkt. No. 33-1 at

2, 8–9, 30.) Presumably, these requests relate to the confiscation of Plaintiff's shoes during the

lockdown. Plaintiff also filed administrative remedy requests concerning "medical care," "medical

treatment/equipment," "sick call issues" and "alleges denied medical care for chest pain," and the

record shows he did exhaust his remedies as to these requests. (*Id.* at 2, 10–21.) When construed

with Plaintiff's medical record, the references to "medical treatment/equipment" support finding that the act of providing medical shoes to Plaintiff is part of his exhausted claim concerning inadequate medical treatment under the Eighth Amendment. However, there is no basis to find that Plaintiff has exhausted any other claims concerning his medical shoes. Further, there is no basis to find Plaintiff exhausted his administrative remedies concerning allegations of deficient nutrition/water quality. The record does not contain any administrative remedy requests pertaining to this issue, and Plaintiff offers no compelling argument here.

Based on the foregoing, the undersigned recommends summary judgment be granted based on exhaustion as to Plaintiff's claims concerning deficient nutrition/water quality. Summary judgment should also be granted as to any claims arising from the alleged confiscation of Plaintiff's medical shoes, other than as it relates to Plaintiff's Eighth Amendment medical treatment claim.

### B.     Availability of *Bivens* Claim

Given the above findings on exhaustion, the only claim remaining is Plaintiff's Eighth Amendment claim for deliberate indifference to serious medical needs. As discussed above, Plaintiff brings this constitutional claim pursuant to *Bivens*. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the United States Supreme Court established a cause of action under the United States Constitution against federal officials in their individual capacities for the violation of federal constitutional rights.[2] *See Carlson v. Green*, 446 U.S. 14, 18 (1980); *Holly v. Scott*, 434 F.3d 287, 289 (4th Cir.), *cert. denied*, 547 U.S. 1168 (2006). "*Bivens* is the case establishing, as a general proposition, that victims of a constitutional violation perpetrated by a federal actor may sue the offender for damages in federal court despite the absence

---

[2] A *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983, and case precedent pertaining to § 1983 claims generally applies to *Bivens* actions. *Harlow v. Fitzgerald*, 457 U.S. 800, 814–20, n.30 (1982); *Farmer v. Brennan*, 511 U.S. 825, 839 (1994).

of explicit statutory authorization for such suits." *Warren v. Drew*, No. 3:10-cv-2086-MBS, 2010 WL 5300940, at *2 (D.S.C. Nov. 18, 2010), *adopted by*, 2010 WL 5313563 (D.S.C. Dec. 20, 2010) (internal citations omitted).

In their Motion, Defendants argue that a new *Bivens* remedy should not be implied as to any of Plaintiff's claims in this action. (Dkt. No. 33 at 30; Dkt. No. 45.) Plaintiff does not offer any compelling argument on this issue. As an initial matter, Plaintiff cannot bring suit against Defendants in their official capacities under *Bivens*. *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) ("[A] *Bivens* action does not lie against . . . officials in their official capacity. . . ."); *Estate of Riopedre v. United States*, 2015 WL 505584 (D.S.C. Feb. 6, 2015) ("*Bivens* claims for damages are not actionable against the United States, federal agencies, or public officials acting in their official capacities"); *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996), *cert. denied*, 519 U.S. 1150 (1997) (same). Thus, the analysis below considers whether Plaintiff's Eighth Amendment claim can proceed against Defendants in their individual capacities.

In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006, 198 L. Ed. 2d 625 (2017). Specifically, the *Bivens* Court found, in the absence of statutory authority, an action for damages for individuals injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *Bivens*, 407 U.S. at 397.

Since the ruling in *Bivens*, the Supreme Court has recognized implied causes of action against federal actors in only two additional situations. In *Davis v. Passman*, the Court provided an implied remedy under the Fifth Amendment's Due Process Clause for gender discrimination in the employment context. 442 U.S. 228 (1979). In *Carlson v. Green*, the Court further expanded

13

*Bivens* under the Eighth Amendment's Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment to a prisoner. 446 U.S. 14 (1980). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855, 198 L. Ed. 2d 290 (2017).

The U.S. Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), reemphasized the limited circumstances under which an individual may bring an implied cause of action against a federal official by clarifying that any expansion of *Bivens* outside of the three cases described above "is now a 'disfavored' judicial activity." *Id.* at 1857. In keeping with this narrow application, the *Ziglar* Court set forth a rigorous test for recognizing a new "implied cause of action" for a constitutional violation by a federal actor. First, the court must determine whether the plaintiff seeks to extend *Bivens* to a new context by evaluating whether the case is "different in a meaningful way from previous *Bivens* cases." *Id.* at 1859. If the plaintiff's claim presents a new *Bivens* context, the court must then evaluate whether any "special factors counsel[] hesitation" in recognizing a new remedy "in the absence of affirmative action by Congress." *Id.* at 1857.

In the recent decision, *Egbert v. Boule*, 142 S. Ct. 1793, 213 L. Ed. 2d 54 (2022), the Supreme Court clarified this analytical framework in a manner that made it even more rigorous, in effect making it significantly more unlikely that an implied cause of action will be recognized. In *Egbert*, the Supreme Court considered two *Bivens* claims: (1) a Fourth Amendment excessive force claim that presented "'almost parallel circumstances'" and a similar "'mechanism of injury'" to *Bivens* itself, 142 S. Ct. at 1805 (quoting *Ziglar*, 137 S. Ct. at 1859), and (2) a novel First Amendment retaliation claim, 142 S. Ct. at 1807–08. Both claims arose out of the plaintiff's interactions with the U.S. Border Patrol. *Id.* at 1799–1802. The *Egbert* court acknowledged that

its precedents "describe two steps," but explained that these steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 142 S. Ct. at 1803; *see also Silva v. United States*, 2022 WL 3023684, at *3 (10th Cir. Aug. 1, 2022) (recognizing that *Egbert* "appeared to alter the existing two-step *Bivens* framework"). The Court instructed that if there is "even a single" rational reason to defer to Congress to create a remedy for relief, "a court may not recognize a *Bivens* remedy." *Id*. at 1803 (citing *Hernandez*, 140 S. Ct. at 741, 743). Moreover, *Egbert* rejected the petitioner's Fourth Amendment claim despite its extremely close factual and legal parallels with *Bivens* itself, affirming that the plaintiff's Fourth Amendment claim presented a new *Bivens* context despite the fact that, as in *Bivens*, the alleged excessive force arose in the setting of the plaintiff's arrest by a law enforcement officer. *Id*. at 1800–01, 1804. The Court spelled out the takeaway from this demanding approach: a *Bivens* remedy will be unavailable "in most every case." *Id*. at 1803 ("If there is a rational reason to think that [Congress is better situated than the courts to decide whether to provide for a damages remedy]—as it will be in most every case—no *Bivens* action may lie. Our cases instruct that, absent utmost deference to Congress' preeminent authority in this area, the courts arrogate legislative power." (cleaned up)). As the Tenth Circuit recently stated, "[t]he Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril." *Silva*, 2022 WL 3023684, at *1.

Applying the framework articulated in *Egbert*, another court in this district recently found that a plaintiff's Eighth Amendment claim, asserting deliberate indifference to his serious medical needs, could not proceed under *Bivens*. *See Washington v. Fed. Bureau of Prisons*, No. 5:16-cv-3913-BHH, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022). Relevant here, in *Washington*, the court found that Plaintiff's Eighth Amendment claim presented a new context:

Plaintiff's *Bivens* claims do not involve a medical emergency, as did *Carlson*, but rather focus on a long term and ongoing course of medical treatment of Plaintiff's chronic, non-fatal condition. This difference is significant for multiple reasons, including that administrative and injunctive relief would have a completely different application to Plaintiff's claims than to the claims in *Carlson*, where the failure to properly address a medical emergency proved fatal. *See Egbert*, 142 S. Ct. at 1803 (explaining that "a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider'" (quoting *Ziglar*, 137 S. Ct. at 1864)). Whereas the Court in *Carlson* fashioned a *Bivens*-type remedy to make right a grave constitutional wrong, Plaintiff's *Bivens* claims here risk transforming this Court into an *ad hoc* medical review board tasked with deciding, with little to no judicial guidance, which medical errors, if any, cross the threshold into constitutional injury. If the plaintiff's claims in *Egbert* implicated a new context as to Fourth Amendment excessive force theory, then Plaintiff's claims here implicate a new context as to Eighth Amendment deliberate indifference theory. It is of no moment that Plaintiff's claims parallel those in *Carlson* to the degree they are brought under the Eighth Amendment and relate to medical care in the prison setting generally. After *Egbert*, such broad similarities with *Bivens*, *Passman*, or *Carlson* are not sufficient on their own to authorize a claim. *See* 142 S. Ct. at 1804–05 (affirming a finding of a new context despite "almost parallel circumstances"). Rather, the Court finds that Plaintiff's *Bivens* claims arise in a new context and proceeds to the special factors analysis.

*Washington*, 2022 WL 3701577, at *5.

Having found the *Washington* plaintiff's claim presented a new *Bivens* context, the court then considered whether "there is [e]ven a single sound reason for a court to defer to Congress rather than create an implied damages remedy." *Id.* (omitting internal quotations). The court found several "sound reasons" to defer to Congress, including: "(1) Congress is better positioned to create remedies in the context of chronic medical care in federal prisons; (2) the Government has already provided alternative remedies that protect claimants like Plaintiff, including processes for administrative and injunctive relief; and (3) Congress' passage of the Prison Litigation Reform Act ('PLRA')." *Id.* at *6.

Here, the undersigned finds the court's analysis in *Washington* is equally applicable to the instant matter. As in *Washington*, Plaintiff's Eighth Amendment claim arises from alleged inadequate medical treatment in a federal prison for a chronic, non-fatal condition. Accordingly,

for the same reasons articulated in *Washington*, the undersigned finds Plaintiff's *Bivens* claims arise in a new context and there are sound reasons for this court to defer to Congress rather than create an implied damages remedy. The undersigned therefore recommends the Court decline to extend the *Bivens* remedy to Plaintiff's Eighth Amendment claim and grant Defendants summary judgment on this basis.[3]

### C.    Merits of Eighth Amendment Claim

In the alternative, should the Court find a *Bivens* remedy exists here, the undersigned recommends Plaintiff's Eighth Amendment claim fails on the merits.

### 2.    Standards

A prison official demonstrates deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. *Id.* at 847; *Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (observing that "deliberate indifference" requires actual knowledge and disregard of a substantial risk of serious injury).

In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." The test for deliberate indifference has two parts. A plaintiff "must prove (1) that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and (2) that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler v.*

---

[3] Here, the undersigned notes that Plaintiff's brief states that "public health service officers can be held liable under tort actions." (Dkt. No. 44 at 5.) However, Plaintiff does not argue that he brings any claims under the Federal Tort Claims Act and the Complaint only alleges constitutional claims against non-medical personnel. Accordingly, the undersigned finds no basis to consider the FTCA's applicability to this action.

*Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)). To satisfy the first part of the test, a plaintiff must show that the injury was objectively serious. *Farmer*, 511 U.S. at 834. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted).

To satisfy the subjective component, a plaintiff must show that a defendant knew of and disregarded the risk posed by the serious medical need. *Farmer*, 511 U.S. at 837. Two components must be shown to satisfy a defendant had a culpable state of mind. First, actual knowledge of the risk of harm to the inmate is required. *Iko*, 535 F.3d at 241 (citing *Young v. City of Mt. Ranier*, 238 F.3d 567, 575–76 (4th Cir. 2001)) (emphasis in original); *see also Cleveland*, 372 F.3d at 303 ("It is not enough that the officers should have recognized [a substantial risk of harm]."). Second, a defendant "must also have 'recognized that his actions were insufficient' to mitigate the risk of harm to the inmate arising from his medical needs." *Iko*, 535 F.3d at 241 (citing *Parrish*, 372 F.3d at 303) (emphasis in original).

An assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate "[d]eliberate indifference . . . by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.*; *see Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("[C]onduct that does not purport to be punishment at all must involve more than ordinary lack for due care . . . . [O]bduracy and wantonness, not inadvertence . . . characterize the conduct prohibited by [the Eighth Amendment]."); *see also Moore v.*

*Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (citing Fourth Circuit cases adopting the Supreme Court's reasoning in *Whitley*).

Where the Eighth Amendment claim is premised on delayed medical care, the plaintiff must show "the delay *results* in some substantial harm to the patient," such as "marked exacerbation of the prisoner's medical condition or frequent complaints of severe pain." *Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) (internal quotation omitted) (emphasis in original); *Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015); *Webb v. Hamidullah*, 281 F. App'x 159, 166-67 (4th Cir. 2008).

Further, to bring a denial of medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. "Mere knowledge is not sufficient to establish personal participation." *Coleman v. Stevenson*, No. 0:09-cv-872-HMH, 2010 WL 2990737, at *4 (D.S.C. June 22, 2010), *adopted by*, 2010 WL 2990740 (D.S.C. July 26, 2010), *aff'd*, 407 F. App'x 709 (4th Cir. 2011).

### 3.     Analysis

Viewing the evidence in a light most favorable to the Plaintiff, there is no genuine issue of material fact as to Defendants' deliberate indifference to Plaintiff's serious medical needs. Here, Defendants Hutchinson, Nevils, Glenn, Lanham, Necomb, V. Martin, Taylor, and Johnson are non-medical personnel.[4] Other than Plaintiff's allegations in the Complaint, there is no evidence

---

[4] While Plaintiff labels Defendant Johnson as a psychologist, there are no allegations or evidence that she was involved in his medical treatment. Rather, Plaintiff's allegations indicate her duties were administrative in nature. (Dkt. No. 1-1 at 13.)

connecting these Defendants to the events at issue. More specifically, the Complaint alleges that Hutchinson, Nevils, Glenn, Lanham, Necomb, V. Martin, Taylor, and Johnson "all failed to act promptly on Plaintiff's complaint to ensure Plaintiff is being treated according to his medical issues." (*Id*. at 19–20.) The Complaint also alleges that Defendants Glenn, Johnson, and V. Martin were responsible for the inventory of Plaintiff's property during the institutional lockdown on August 7, 2019. (Dkt. No. 1-1 at 13.) Plaintiff alleges these Defendants did not properly document the confiscation of his shoes, and that he has suffered "swelling in his foot and leg" as a result. (*Id*. at 15.) Plaintiff alleges Defendant Hutchinson, as acting warden, was responsible for the lockdown. (*Id*.) Plaintiff further alleges he sent "several requests to" Defendants Lanham and Necomb "on the mistreatment he is receiving from their department," Health Services, but they did not "conduct a follow up." (*Id*. at 18.)

Upon careful review, the record does not support finding that any Defendants acted in a way that was deliberately indifferent to a serious medical need. Indeed, the record shows that after the lockdown occurred and Plaintiff's physical symptoms allegedly worsened, physicians prescribed multiple medications; Plaintiff had labs drawn, a colonoscopy, and consulted with gastroenterologists in an effort to diagnose and treat his abdominal pain; Plaintiff had x-rays taken of his feet in an effort to diagnose and treat his feet and leg pain; and Plaintiff received "alternative institutional shoes" and was later given the opportunity to get custom medical shoes. As non-medical personnel, these Defendants were entitled to rely on the medical staff's expertise, diagnosis, and treatment plan. *See Mullins v. Clear*, No. 7:20-cv-00573, 2021 WL 4462918, at *5 (W.D. Va. Sept. 29, 2021) (finding "to the extent [non-medical official] was made aware of any medical concerns or complaints, he was allowed to rely on the medical professionals as to what treatment was required" (internal quotations omitted)); *Pickens v. Lewis*, No. 1:15-cv-275-

FDW2018 WL 2187051 (W.D.N.C. May 11, 2018) (holding that prison officials without medical training are "not responsible for determining the course of treatment or for overruling the opinions of those professionals") (quotations and citations omitted).

Based on the foregoing, the undersigned recommends granting Defendants summary judgment on Plaintiff's Eighth Amendment claim for deliberate indifference to serious medical need.

## CONCLUSION

It is therefore RECOMMENDED, for the foregoing reasons, that Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment (Dkt. No. 33) be GRANTED, Plaintiff's Motion for Summary Judgment (Dkt. No. 40) be DENIED, and this action be dismissed.[5]

IT IS SO RECOMMENDED.

September 19, 2022
Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

---

[5] For the foregoing reasons, Plaintiff's Eighth Amendment claim should be dismissed with prejudice. Having found Plaintiff failed to exhaust any other constitutional claims alleged in the Complaint, those remaining claims are dismissed without prejudice. *See*, *e.g.*, *Duckett v. Fuller*, No. 6:13-cv-01079-JMC, 2013 WL 6181417, *3 (D.S.C. Nov. 22, 2013) (finding that a dismissal for failure to exhaust administrative remedies is generally without prejudice).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).